## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

TAKARA JACKSON                                            CIVIL ACTION

VERSUS                                                    19-149-SDD-EWD

SID J. GAUTREAUX, III, *et al*

### RULING

This matter is before the Court on the *Motion to Dismiss Amended and Supplemental Complaint for Damages*[1] filed by Defendants Sid J. Gautreaux, III ("Sheriff Gautreaux") and Ronald Landry ("Deputy Landry") (collectively, "Defendants"). Plaintiff Takara Jackson ("Plaintiff") filed a *Response*,[2] to which Defendants filed a *Reply*.[3] For the reasons that follow, the Court finds that Defendants' *Motion* shall be GRANTED in part and DENIED in part.

### I.      Factual and Procedural Background

On March 14, 2018, Deputy Ronald Landry of the East Baton Rouge Parish Sheriff's Office ("EBRPSO") shot and killed Shermichael Ezeff ("Ezeff") after Ezeff approached him while he was serving an unrelated restraining order at an apartment complex on North Ardenwood Street in Baton Rouge, Louisiana.[4] Plaintiff, who brings suit on behalf of her daughter with Ezeff, alleges in her *Complaint* that Ezeff "arrived at the [apartment complex] looking like he had been in a fight, with a torn shirt and spattered with blood."[5] One of his relatives "flagged down" Deputy Landry, who met Ezeff "in a

---

[1] Rec. Doc. No. 42.
[2] Rec. Doc. No. 49.
[3] Rec. Doc. No. 53.
[4] Rec. Doc. No 1; Rec. Doc. No. 40.
[5] Rec. Doc. No. 40, p. 4.

grassy area between one of the apartment buildings and a fence."[6] Deputy Landry

allegedly asked Ezeff if he had a weapon, to which Ezeff responded "no." Landry told

Ezeff to put his hands on the nearby fence; he allegedly complied, then "moved to say

something to" Deputy Landry, at which point, Plaintiff alleges, Landry "stepped back and

pulled out his taser, dropping the taser, the Defendant Deputy Landry pulled his gun out

and shot and killed Ezeff."[7] Plaintiff alleges that, according to witnesses, "there was never

a physical confrontation"[8] between the men, but that Ezeff "was experiencing psychotic

episodes"[9] at the time.

Plaintiff filed this suit on March 13, 2019. On June 28, 2019, Defendants Sheriff

Gautreaux and Deputy Landry filed a *Motion to Dismiss for Failure to State a Claim*.[10]

Plaintiff filed an untimely opposition, which was stricken from the record upon Defendants'

motion.[11] The *Motion to Dismiss* was then granted as unopposed on February 27, 2020,

though the Court allowed Plaintiff to file a response setting forth valid reasons, if any, for

her failure to timely oppose the *Motion*.[12] Plaintiff's *Response* indicated that she was

unable to obtain necessary facts because Ezeff's shooting was still under investigation.[13]

The Court allowed Plaintiff to file an *Amended Complaint*.[14] After it was filed, Defendants

filed the instant *Motion to Dismiss*.

Reading her *Complaint* and *Amended Complaint* together, Plaintiff brings a claim

under 42 U.S.C. § 1983 against both Defendants, alleging that they violated Ezeff's

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] Rec. Doc. No. 40, p. 8.
[10] Rec. Doc. No. 14.
[11] Rec. Doc. No. 34.
[12] Rec. Doc. No. 36.
[13] Rec. Doc. No. 37-2.
[14] Rec. Doc. No. 40.

Fourth Amendment right to be free from excessive force and, in the case of Sheriff Gautreaux, that he implemented policies and condoned practices that were deliberately indifferent to the rights of Ezeff "and all persons similarly situated."[15] Plaintiff also alleges various state law claims. Defendants move to dismiss all of the above, arguing that Plaintiff has failed to allege facts that state a claim for relief against Sheriff Gautreaux and Deputy Landry. As to the individual capacity § 1983 claims against them, Defendants also argue that they are entitled to qualified immunity. Even a cursory reading of Plaintiff's *Complaints* reveals that they offer somewhat sparse factual allegations and are rife with repetitive boilerplate, conclusory statements, and confusing statements of the law. Nevertheless, on a motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[16]  With that in mind, the Court turns now to the parties' arguments.

## II.    Law and Analysis

### A.  Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[17] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[18] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[19] In *Twombly*, the United States Supreme

---

[15] Rec. Doc. No. 1, p. 2.

[16] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

[17] *Id.*

[18] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[19] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area*

Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6)

motion to dismiss.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do."[20] A complaint is also insufficient if it

merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[21] However,

"[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."[22] In order to satisfy the plausibility standard, the plaintiff must show "more than

a sheer possibility that the defendant has acted unlawfully."[23] "Furthermore, while the

court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable

to the plaintiff.'"[24] On a motion to dismiss, courts "are not bound to accept as true a legal

conclusion couched as a factual allegation."[25]

    B.  Excessive Force Claims Under 42 U.S.C. § 1983

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for

redressing the violation of federal law by those acting under color of state law.[26] It

provides:

---

Rapid Transit, 369 F.3d at 467).

[20] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter Twombly).

[21] Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "Iqbal").

[22] Twombly, 550 U.S. at 570.

[23] Iqbal, 556 U.S. at 678.

[24] Taha v. William Marsh Rice University, 2012 WL 1576099 at *2 (quoting Southland Sec. Corp. v. Inspire Ins. Solutions, Inc., 365 F.3d 353, 361 (5th Cir. 2004)).

[25] Twombly, 550 U.S. at 556 (quoting Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

[26] See Migra v. Warren City School District Board of Educ., 465 U.S. 75, 82 (1984); Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 19 (1981).

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...[27]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights conferred elsewhere.'"[28] To prevail on a Section 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[29]  A Section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[30]

Plaintiff alleges that Ezeff's Fourth Amendment right to be free from excessive force was violated by Defendants. To prove an excessive force claim, Plaintiff must demonstrate "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[31] Excessiveness turns upon whether the degree of force used was reasonable in light of the totality of the circumstances facing the officer in each case.[32] Relevant factors include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to

---

[27] 42 U.S.C. § 1983.

[28] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta, TX*, 73 F.3d 60, 63 (5th Cir.), *cert. denied*, 519 U.S. 818 (1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir.1985).

[29] *See Blessing v. Freestone,* 520 U.S. 329, 340 (1997); *Daniels v. Williams,* 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir.1984).

[30] *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.), *cert. denied*, 498 U.S. 908 (1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir.1986).

[31] *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)).

[32] *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).

evade arrest by flight."[33]   When deciding whether to use force, officers must determine

"not only the need for force, but also 'the relationship between the need and the amount

of force used.'"[34] The reasonableness of the officers' conduct cannot be judged with the

benefit of hindsight, but must be assessed from the viewpoint of a reasonable officer on

the scene at the moment the force is applied.[35] Certainly,

> [n]ot every push or shove, even if it may later seem unnecessary in the
> peace of a judge's chambers ... violates the Fourth Amendment. The
> calculus of reasonableness must embody allowance for the fact that police
> officers are often forced to make split-second judgments—in circumstances
> that are tense, uncertain, and rapidly evolving—about the amount of force
> that is necessary in a particular situation.[36]

"Excessive force claims are [thus] necessarily fact-intensive and depend[ ] on the facts

and circumstances of each particular case."[37] The facts must be judged objectively

"without regard to [the officer's] underlying intent or motivation."[38]

## C. Individual Capacity § 1983 Claims

Plaintiff appears to bring an individual capacity §1983 claim for excessive force

against both Defendants, pleading generally that "Defendants. . .subject[ed] the decedent

to excessive force"[39] and that the "wrongful acts of defendants killed the decedent."[40] This

collective pleading, where allegations are levied against multiple defendants without

differentiation, does not pass muster. Indeed, "[p]ersonal involvement is an essential

element of a civil rights cause of action."[41]

---

[33] *Id.*

[34] *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)).

[35] *See Graham*, 490 U.S. at 396, 109 S.Ct. 1865.

[36] *Id.* at 396–97, 109 S.Ct. 1865 (internal citations and marks omitted).

[37] *Poole*, 691 F.3d at 628 (internal citations and marks omitted).

[38] *Graham*, 490 U.S. at 397, 109 S.Ct. 1865.

[39] Rec. Doc. No. 1, p. 6.

[40] *Id*.

[41] *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

Further, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[42] Plaintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation."[43] "This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation."[44] As to Sheriff Gautreaux, Plaintiff does not make any allegation that he was personally involved in the events that led to Ezeff's death. As a result, her individual capacity claim against the Sheriff cannot survive. Defendants argue as much in their *Motion to Dismiss*, and Plaintiff does not address that argument or oppose it. Accordingly, the §1983 claim for excessive force against Sheriff Gautreaux in his individual capacity shall be dismissed with prejudice.

Deputy Landry argues that the individual capacity excessive force claim against him should be dismissed because Plaintiff has not alleged sufficient facts to overcome his defense of qualified immunity. The issue of qualified immunity requires the Court to make a two-part inquiry: (1) whether the facts alleged or shown by the plaintiff demonstrate a violation of a constitutional right, and (2) if a violation has been established, whether the officer's actions were objectively reasonable in light of clearly established law at the time of the alleged misconduct.[45] A court may begin its analysis of qualified immunity with either prong.[46] Here, Defendants argue that Plaintiff fails to carry her burden because she "makes conclusory allegations with no factual predicate for her

---

[42] *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).
[43] *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002)(citing *Anderson,* 184 F.3d at 443).
[44] *Id*. (citing *Baker v. Putnal,* 75 F.3d 190, 194 (5th Cir.1996)).
[45] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).
[46] *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014).

conclusion that defendants violated the decedent's constitutional rights by using excessive force."[47] Specifically, they point out, Plaintiff makes no factual allegations "of the circumstances surrounding Deputy Landry and Ezeff meeting in a grassy area or how Ezeff thereafter moved toward the deputy, but Plaintiff acknowledges Ezeff stopped complying with the deputy's orders."[48]

It is a plaintiff's burden to negate the defense of qualified immunity once it has been raised.[49] "Furthermore, when an officer asserts qualified immunity, 'a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants.'"[50] Plaintiff argues that she has successfully pled facts to overcome the invocation of qualified immunity, pointing out that, based on the allegations in the *Complaint*, the force applied was excessive because "it is nonsensical to assert that Deputy Landry was in any way reasonably trying to prevent serious injury or death."[51] Plaintiff urges the Court to be guided by the framing offered by the United States Supreme Court in *Saucier v. Katz*: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" The answer to this question is perhaps not as straightforward as Plaintiff believes it to be. To be sure, her *Complaint* sets forth allegations that, viewed in the light most favorable to her, suggest that Deputy Landry's conduct violated Ezeff's rights. In particular, her allegation that Landry shot Ezeff despite the absence of any

---

[47] Rec. Doc. No. 53, p. 3.
[48] Rec. Doc. No. 42-1, p. 22.
[49] *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).
[50] *Sinegal v. City of El Paso*, 414 F. Supp. 3d 995, 1004 (W.D. Tex. 2019)(quoting *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995)).
[51] Rec. Doc. No. 49-2, p. 7.

physical altercation, "struggle," or provocation suggests excessive force.

But the *Complaints* also contain factual allegations that tend to show Deputy Landry may have reasonably feared for his safety. According to the Plaintiff's allegations, Deputy Landry was approached by a man "in distress"[52] who looked "like he had been in a fight, with a torn shirt and spattered with blood."[53] That man had been hospitalized for "psychotic episodes" two days previously, and when he was released allegedly "showed signs of the same psychotic symptoms he was taken to the hospital for initially."[54] When Landry told the man to place his hands on the fence, he did, but then he "moved."[55] Nevertheless, the Court is bound to construe the facts in favor of Plaintiff, and although there are allegations tending to suggest that Ezeff could have been perceived as posing a threat to Deputy Landry, the pleaded facts do not establish that he posed an immediate threat when Landry shot him.[56] In the Court's view, Plaintiff's allegations rise above the level of "general characterizations." Although the *Complaints* are not models of clarity or detail, the Court concludes that Plaintiff has plausibly – beyond a mere *possibility* -- alleged excessive force on the part of Deputy Landry. Likewise, there can be no question that the situation as pled by Plaintiff implicates a clearly established right. In *Amador v. Vasquez*,[57] the Fifth Circuit held that it would violate clearly established law for an officer to shoot a suspect who was holding a knife but had his hands raised and was submissive when shot. The well-pleaded facts in this case establish that Ezeff had no weapon and

---

[52] Rec. Doc. No. 1, p. 3.
[53] Rec. Doc. No. 40, p. 4.
[54] *Id*. at p. 6.
[55] *Id*. at p. 4.
[56] See *Summers v. Hinds Cty., Mississippi*, 508 F. Supp. 3d 124, 134 (S.D. Miss. 2020)(district court finding that plaintiff negated qualified immunity defense in excessive force case where "[n]othing in the pleaded facts suggests [the plaintiff] posed an immediate threat when [the deputies] shot, much less a threat that would allow the use of deadly force").
[57] 961 F.3d 721, 730  (5th Cir. 2020).

that the extent of his failure to comply with Deputy Landry was that he "moved to say something" to him. Ergo, Deputy's Landry's alleged actions were even more violative of clearly established law than the actions in *Amador*. Because Plaintiff has pled a constitutional violation of a clearly established right, the Court concludes that Deputy Landry is not entitled to qualified immunity at this stage. Defendants are, of course, able to revisit the issue on summary judgment when the record regarding Deputy Landry's encounter with Ezeff is better-developed.

## D.  Official Capacity § 1983 Claims

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."[58] "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."[59] "Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom."[60] "Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations. But a policy may also be evidenced by custom, that is. . .a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy."[61] Further, "[l]iability will only attach if the

---

[58] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).
[59] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).
[60] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).
[61] *Id*. at 579.

municipality was *deliberately indifferent* to the constitutional rights of citizens—a showing of negligence or even gross negligence will not suffice."[62]

Defendants assert that Plaintiff's official capacity claims against Deputy Landry should be dismissed because Plaintiff does not allege that Landry is a final decision maker or policy maker for the East Baton Rouge Sheriff's Office. The Court agrees. Plaintiff does not address or rebut this argument whatsoever; accordingly, the official capacity § 1983 claims against Deputy Landry will be dismissed.

The analysis is less clear with respect to Sheriff Gautreaux. Although Plaintiff alleges a litany of official capacity claims against him in her *Complaints*, her allegations are generally quite conclusory and do not come close to establishing deliberate indifference. Defendants gamely addressed each claim in their *Motion to Dismiss*, but the only claim that Plaintiff argued for in her *Opposition* is, as she puts it, her claim that "there is a policy, practice, or custom of the East Baton Rouge Sheriff's Office subjecting people that are similarly situated to the defendant and complainant to unreasonable uses of force."[63] Failure to respond to arguments constitutes abandonment or waiver of the issue.[64] The Court will consider this claim for constitutionally deficient policy, but dismiss the other official capacity claims against Sheriff Gautreaux as abandoned.[65]

On the policy claim, Defendants argue that Plaintiff has not alleged sufficient facts, making only conclusory allegations of an isolated case without any facts to establish a

---

[62] *Johnson v. Louisiana*, No. CIV.A. 09-55, 2010 WL 996475, at *13 (W.D. La. Mar. 16, 2010).

[63] Rec. Doc. No. 49-2, p. 8.

[64] See, e.g., *Kellam v. Servs.*, No. 3:12-CV-352-P, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.,* 560 F. App'x 360 (5th Cir. 2014).

[65] Plaintiff abandoned her claims for failure to train and supervise, for selecting, retaining, and assigning employees with demonstrable propensities for excessive force, for condoning and encouraging officers in the belief that they can violate rights with impunity, for deprivation of familial relationship, for deliberate indifference to medical needs, and failure to adequately discipline officers involved in misconduct.

pattern of violations. The only allegation along these lines is Plaintiff's statement that "Numerous complaints between 2014-2019 regarding police brutality and excessive force had been lodged against the East Baton Rouge Sheriff's Office."[66] Per Plaintiff, this allegation is sufficient because it sets forth that "this custom, policy, or practice has been going on for some time."[67] But alleging that a poilcy has been "going on for some time" is inadequate; more is required. It is well-established that "proof of a custom or practice requires more than a showing of isolated acts."[68] Indeed, prior incidents are only proof of a pattern when they are "sufficiently numerous"[69] and "demonstrate actions occurring "for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."[70] Moreover, "[a] pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.'"[71]

Plaintiff does not allege how many other, similar incidents have occurred as a result of EBRSO's alleged policy, apart from saying that they are "numerous." She does not plead any facts or detail regarding these incidents – including whether the "numerous complaints" were substantiated -- that would allow the Court to conclude that a pattern indeed exists. In *Peterson v. City of Fort Worth, Tex.,* the Fifth Circuit affirmed the district court's holding that 27 complaints of excessive force against a police department were insufficient to establish a pattern because the plaintiffs "failed to provide context that

---

[66] Rec. Doc. No. 40, p. 5.
[67] Rec. Doc. No. 49-2, p. 8.
[68] *Burge v. St. Tammany Par.,* 336 F.3d 363, 370 (5th Cir. 2003)
[69] *Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 851 (5th Cir. 2009).
[70] *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir.), on reh'g, 739 F.2d 993 (5th Cir. 1984).
[71] *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir. 2005).

would show a pattern of establishing a municipal policy."[72] Likewise here. Plaintiff's repetition of boilerplate law in her *Opposition* cannot rehabilitate her extremely sparse allegations on this issue. The Section 1983 official capacity claims against Sheriff Gautreaux shall be dismissed.

E.  Claims Against the East Baton Rouge Sheriff's Office

Plaintiff's *Complaints* appear to name as a Defendant the East Baton Rouge Sheriff's Office. Defendants move to dismiss any claims against EBRSO, which they describe as "a non-existent entity that has no legal capacity to be sued."[73] Indeed, the Supreme Court of Louisiana instructs that "[i]t is well settled in the lower courts that a Sheriff's Department is not a legal entity capable of being sued."[74] Plaintiff does not address or respond to this argument in her *Opposition*. All claims against "the East Baton Rouge Sheriff's Office" will be dismissed with prejudice.

F.  State Law Claims

Plaintiff brings several state law claims against Defendants: a state law excessive force claim pursuant to the Louisiana Constitution, Article I, § 20; negligence, pursuant to Louisiana Civil Code article 2315; a state law failure to train and supervise claim against Sheriff Gautreaux; and assault and battery against both Defendants. Defendants move to dismiss all of the above.

"Louisiana's excessive force tort mirrors its federal constitutional counterpart."[75] Thus, Plaintiff's state law excessive force claim meets the same fate as her § 1983 claim; it survives the motion to dismiss as to Deputy Landry. The state law negligence claims

---

[72] *Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 851 (5th Cir. 2009).
[73] Rec. Doc. No. 42-1, p. 5.
[74] *Valentine v. Bonneville Ins. Co.,* 96-1382 (La. 3/17/97), 691 So. 2d 665, 668.
[75] *Deville v. Marcantel*, 567 F.3d 156, 172 (5th Cir. 2009).

also survive as to Deputy Landry. Reasonableness is at the heart of both the excessive

force analysis and the negligence analysis, and the Court concluded above that Plaintiff

has stated a plausible claim that Deputy Landry's use of force was not reasonable under

the circumstances.[76] Again, the Court emphasizes that further discovery may illuminate

the details of Deputy Landry's encounter with Ezeff and reveal that the force was not

excessive; however, at the pleading stage, the Court finds that Plaintiff's negligence

claim, state law excessive force claim, and assault and battery claim against Deputy

Landry may move forward.

As for the state law claims against Sheriff Gautreaux, the Court finds that the state

law excessive force claim necessarily fails because there has been no allegation that he

was personally involved in the events that give rise to the excessive force claim. The claim

for vicarious liability for Deputy Landry's excessive force, however, survives. The failure

to train and supervise claim against Sheriff Gautreaux fails, for two reasons. First,

Plaintiff's allegations on this issue are conclusory and bare-bones. Second, as

Defendants argue, Sheriff Gautreaux's discretionary hiring, training, and supervision

decisions are shielded by the immunity provided by Louisiana Revised Statute §9:2798.1,

which provides:

> Liability shall not be imposed on public entities or their officers or employees
> based upon the exercise or performance or the failure to exercise or perform
> their policymaking or discretionary acts when such acts are within the
> course and scope of their lawful powers and duties.

This Court has held that this immunity statute applies to a sheriff's training and supervision

---

[76] See, e.g. *Shepherd on behalf of Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 286 (5th Cir. 2019)("[E]xcessive force claims under both federal and Louisiana law turn on whether the use of force was objectively reasonable given the totality of the circumstances. This has been widely recognized by this court, Louisiana federal district courts, and the Louisiana Supreme Court").

duties.[77] Plaintiff does not respond to this state law immunity argument in her *Opposition*, appearing to concede that vicarious liability is her only viable state law claim against the Sheriff.[78] In short, the Court concludes that the only state law claim against Sheriff Gautreaux that will survive the motion to dismiss is the claim for vicarious liability for excessive force and/or battery based on Deputy Landry's actions.

## III.    Leave to Amend

Federal Rule of Civil Procedure 15(a) "requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend."[79]  However, "[l]eave to amend is in no way automatic, but the district court must possess a 'substantial reason' to deny a party's request for leave to amend."[80]  The Fifth Circuit further described the district courts' discretion on a motion to amend as follows:

> The district court is entrusted with the discretion to grant or
> deny a motion to amend and may consider a variety of factors
> including "undue delay, bad faith or dilatory motive on the part
> of the movant, repeated failures to cure deficiencies by
> amendments previously allowed, undue prejudice to the
> opposing party ..., and futility of the amendment." *Jones*, 427
> F.3d at 994. (citation omitted). "In light of the presumption in
> favor of allowing pleading amendments, courts of appeals
> routinely hold that a district court's failure to provide an
> adequate explanation to support its denial of leave to amend
> justifies reversal." *Mayeaux v. La. Health Serv. & Indent. Co.*,
> 376 F.3d 420, 426 (5th Cir. 2004) (citation omitted). However,
> when the justification for the denial is "readily apparent," a
> failure to explain "is unfortunate but not fatal to affirmance if
> the record reflects ample and obvious grounds for denying

---

[77] *Skinner v. Ard*, No. CV 19-66-JWD-EWD, 2020 WL 699740, at *10 (M.D. La. Feb. 11, 2020)("Sheriff Ard is a policymaker and in his discretionary decision-making capacity, has to train and supervise deputies at the Livingston Parish Sheriff's Office. La. R.S. 9:2798.1 applies to those decisions"); See also *Hoffpauir v. Columbia Cas. Co.,* 2013 WL 5934699 (M.D. La. 11/5/13).

[78] Rec. Doc. No. 49-2, p. 12.

[79] *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005) (internal citations and quotations omitted).

[80] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones*, 427 F.3d at 994).

leave to amend." (citation and internal quotation marks omitted).[81]

In addition, the Fifth Circuit has made clear that "[d]enying a motion to amend is not an abuse of discretion if allowing an amendment would be futile."[82]  An amendment would be deemed futile "if it would fail to survive a Rule 12(b)(6) motion."[83]

Having carefully considered the matter, the Court declines to grant leave to amend. First, as stated above, "repeated failures to cure deficiencies by amendments previously allowed" is a factor to consider when granting or denying leave to amend, as is undue delay.[84]  Here, Plaintiff sought leave to amend after Defendants filed their original motion to dismiss.[85] Plaintiff nevertheless failed to make allegations in response to Defendants' arguments. Every claim that the Court now dismisses was objected to in Defendant's original motion, largely on the same grounds. On September 1, 2020, Plaintiff moved for leave to file a *Second Amended Complaint* "in order to add specificity a list of cases of excessive force and unconstitutional police misconduct regarding the customs and practice of the East Baton Rouge Sheriff's Office/Sid Gautreaux."[86] The proposed amendment was just that: a list of case names and citations. The magistrate judge denied the motion for leave to file, finding that the issue of amendment was already pending before the Court in the briefing on the pending *Motion to Dismiss*.

Second, any amendment would only compound the delay that has already occurred in this case. On September 18, 2020, Plaintiff filed a *Motion* representing that

---

[81] *Id.*
[82] *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)).
[83] *Id.*
[84] *Id.* (citation omitted).
[85] *See* Rec. Doc. No. 14.
[86] Rec. Doc. No. 50, p. 2.

she was unable to obtain the information necessary to successfully plead her case because the East Baton Rouge Parish District Attorney's Office was still investigating Ezeff's shooting and therefore declined to share information with Plaintiff. Plaintiff moved to stay the case pending the outcome of the criminal investigation, and Defendants did not oppose.[87] On December 14, 2021, Plaintiff moved to reopen the case, and the magistrate judge granted her motion. Plaintiff avers that the grand jury declined to indict Deputy Landry in connection with the shooting.[88] Even without the benefit of whatever additional information may be had now that the investigation is closed, the Court concludes that Plaintiff has pled sufficiently to overcome qualified immunity as to Deputy Landry. The bulk of the other claims are either foreclosed as a matter of law or were abandoned by Plaintiff in her briefs, and thus amendment would be futile. To delay these proceedings further with an additional round of briefing, especially when Plaintiff has repeatedly failed to abide by deadlines, would not be in the interest of justice. Accordingly, this case shall move forward with the *Complaints* already filed.

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendants' *Motion to Dismiss*[89] is GRANTED in part and DENIED in part.  The official capacity and individual capacity Section 1983 claims against Sheriff Gautreaux are dismissed with prejudice. The official capacity Section 1983 claims against Deputy Landry are dismissed with prejudice, but the *Motion* is denied with respect to the individual capacity Section 1983 claims against Deputy Landry. The state law claims against Deputy Landry remain viable, but all state

---

[87] Rec. Doc. No. 58; Rec. Doc. No. 59.
[88] Rec. Doc. No. 58, p. 1.
[89] Rec. Doc. No. 42.

law claims against Sheriff Gautreaux are dismissed with prejudice, with the exception of vicarious liability. All claims against the "East Baton Rouge Sheriff's Office" are dismissed with prejudice.

Signed in Baton Rouge, Louisiana the 9th day of March, 2022.


_____

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**